May it please the court, the fraud here with my defendant and her co-conspirators was global and very wide in its reach. They created literally hundreds of dating profiles, fake ones, posing as men and women, sometimes white people, sometimes people of color, sometimes as US citizens, and sometimes as foreign nationals. And then they would wait. They would wait for somebody to see their profile, as these things do on the website, by messaging back and forth. And first of all, if somebody wanted to meet in person, they would cut them off immediately. That wasn't going to work. But as messages would go back and forth, and sometimes they would, my clients would see, or my client would see profiles that they sent messages to and started up interactions. With some subset of these, personal relationships would develop. And then as these schemes went along, at some point, after they've traded enough messages, a fake calamity would befall one of the person behind the fake profile. There'd be a foreign arrest, a cash and passport, a requirement for back taxes. What does this have to do with the vulnerable victim issue? Well, what it shows, Your Honor, is that they weren't looking, as the district court found, for people who had deteriorated mentally because of age. What they were looking for is people who had money and that would respond quickly when one of these calamities would arise. And I think the district court's error was to conflate the consequences of this fraud and then jump backwards to the conclusion that they must have been vulnerable. But the victim finding, the judge could still have sentenced to this, sentenced Iriri to the same term, right? That's correct. Well, I don't know why he even bothered with vulnerable victim. Why the judge did? I think your behavior was outrageous. The behavior was outrageous and it was, in my short career, I don't know why the judge fussed about vulnerable victims. He's not bound by the guidelines. He doesn't have to calculate them. He doesn't have to stick to them. But the fact is that he did and he didn't create a parallel justification for the sentence that can leave this court with the firm conviction that he would have given the same sentence anyway. And that's what he had to do. No, he didn't have to do anything. Look, he can have his own concept of a vulnerable victim. He has to calculate the guideline. He doesn't have to give a sentence within the guidelines range. And if he decides, he obviously feels very strongly that these are vulnerable victims. And even if his understanding of the term doesn't match that of the Sentencing Commission, he can still give this sentence. Yes, he can. But he has to first calculate the guidelines range correctly. And here he did. He found that they were, his finding that they were vulnerable because of age is erroneous. And clearly so. There was no nothing in the record to show that these people, any of the victims, which ranged in age from 40 to 71 by the time of the typical deteriorations of mental and physical ability that we would see that made the fraud more likely. You don't have to have mental deterioration in order to be a vulnerable victim. These people were very upset by what happened to them. And being upset is different after the fact. I don't understand why you say that. If you're upset, it shows a In the post-arrest interview, didn't Desiree acknowledge that they sought vulnerable victims? No, what she said is, look, they were looking for people that were, had specifically said that they had incomes or wealth of over $100,000. Yeah, but they didn't just ask for the money. The development of the relationship speaks to seeking out the vulnerable individual, right? But that's true of any fraud. That's what they're looking for. Was it unusually, but were any of these victims unusually vulnerable? Why do you say unusually? In the commentary, it does, to the vulnerable victim. It says there has to be an unusual vulnerability that led to or was due, the fraud was succeeded in part due to the vulnerability. And they talk about unusual vulnerabilities like being, having terminal cancer or being, you know, something not like a bank teller where it's just your job and there's just more of a risk. Okay, well, thank you, Mr. Morris. Ms. Dushman? May it please the court, my name is Meredith Dushman and I do represent the appellee, the United States. And our position is that the district court got it exactly right here. And we're asking the court to affirm. The district court did not apply, did not err by applying the two-level vulnerable victim enhancement. The district court found that all the victims in the case actually were particularly susceptible to the criminal conduct. And that one of the victims was also unusually vulnerable due to age under this court's precedent in United States v. Sims. Those findings just were not clearly erroneous. Ms. Arreary knew that she was targeting vulnerable people. She admitted, and the court found, that the scheme targeted older people. Some of the profiles were actually posted on websites specifically for people over 50. SeniorPeopleMeet.com, OurTime.com. And then from the larger pool of victims who responded to the fake profiles, she concentrated on those that she and Michael Adoki determined to be vulnerable. In her post-arrest interview, which is right in the pre-sentence report, and Your Honor asked this question, Arreary admitted that Michael Adoki had her, quote, concentrate on talking to people that were vulnerable, who just wanted someone to listen to them. I think it's really important that the scheme itself in this case required obtaining biographical and financial information. Ms. Arreary was keenly aware of the ages of people. She was keenly aware of the financial impact that her scam was having on them as they went along. In fact, knowing the financial positions of the victim was necessary to further the fraud. When one asset of a victim was depleted, there was another story to get the next asset. And on and on it went. Oh, your savings account are drained? Do you have any credit cards? How about you get some money for us there? Tax refunds? Are you getting a tax refund? How about your settlement for your car accident? And it just went on and on and on. And Arreary and the others really systematically drained these people's assets, leaving many of them not only broke, but also owing money. And then due to their ages, a lot of them don't have, most I think, don't have a meaningful ability to recoup the losses. These victims were re-victimized over and over and over again. And they were reloaded as that term was used in United States versus Jackson. And the scam was individualized. Did the judge give the sentence that you had asked for? Your Honor, the United States recommended a sentence at the top of the guideline range, and the court went above that. And the court what? The court went above that. Went above your recommendation? We recommended the top of the guideline range, and the court, as you know, went well above that. Yes. He went above it because of the vulnerable victim enhancement or for other reasons? Well, the way the court explained it was that the harm done to the victims, although the vulnerable victim enhancement did give some bump in the guideline range that would account for the fact that they targeted these people and then the harm to them, that really in terms of the plain numbers, he just didn't think it was enough. The conduct under 3553A was so egregious that the guidelines just simply did not address the seriousness of the offense. And defense counsel is right. The court did not come right out and say, I would give the same sentence even if I wouldn't have imposed the vulnerable victim enhancement. But the court's continual reference to the 3553A factors, the court's reference twice to the fact that the court felt like, although it had to consider the guidelines, what it wanted to do was really that the court wanted to reflect its mandate to do justice and that it thought that this was the sentence that best reflected justice for the victims but also for Miserere. And for all these reasons, Your Honor, unless the court has any questions, we would ask you to affirm. Okay. Thank you, Ms. Dushman. Mr. Moyer. If you turn to pages 26 to 29 of the appendix, that is the part of the transcript where the 71-year-old victim in this case gives her victim impact statement. It was a bomb in the courtroom and certainly drove this sentence. And I would submit to the court that somebody who writes that articulately, shows that amount of self-awareness, shows that amount of insight and intelligence and sophistication, is not somebody that you could call a vulnerable or an unusually vulnerable victim. That's absurd. Words cannot even describe the devastation and deep hurt I feel as a result of your criminal action. People don't say things like that in public unless they are suffering. Of course. And nobody is denying their suffering, which was profound. Beyond my financial devastation, I have numerous other emotional, mental, and physical problems as a result of this trauma. My loss of dignity, my sense of hopelessness, my inability to trust, sleep deprivation, shame, guilt, fear, chronic depression, extreme stress, and thoughts of suicide. Now do you think that's normal? Or do you think people who react so greatly, with such upset, disgusting, sick, demented, etc. Don't you think those are vulnerable people? I think those are... Because they're not vulnerable people. Who are vulnerable? Just feeble-minded people, or crazy people, or what? I would submit to the court that the vulnerable victim enhancement doesn't apply, or excuse me, the analysis isn't on what the effect was. It's whether the defendant... No, because you infer the condition of the person from the effect. If the effect is much greater than on the average person, you say, well, to have reacted with such a litany of suffering to this fraud suggests a vulnerable person. Because not everybody reacts in that fashion. The average person, I don't think, would talk that way. They'd feel, you know, they've been a sucker, and so on. May I answer? Sure. I think the more proper inference is that this was a very successful and very harmful and very... So the judge could have forgotten about the vulnerable victim and just say this was a particularly ugly crime and throw the book at him. Yes, he could have, but he misjudged. Well, that's what he would do if we reversed. We don't know. Of course he would. This is outrageous behavior. It deserves a very heavy punishment. That's correct. We don't dispute that. But anybody, no matter how badly they behave, deserves a fairly calculated and correctly calculated guideline range. But the judge doesn't have to give a guideline sentence. That's correct. What's the statutory maximum? For this, I believe it was 20 years. Well, maybe if we reverse, that's what you'd get. Would you like that? Obviously we would not. Okay. Well, thank you very much. Thank you.